# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
### Assigned on Briefs October 13, 2011

## IN RE: BREANNA A.L.

### Appeal from the Juvenile Court for Hamilton County
### No. 240399     Suzanne Bailey, Judge

### No. E2011-01245-COA-R3-PT-FILED-NOVEMBER 3, 2011

The Juvenile Court for Hamilton County ("the Juvenile Court"), upon a petition by the State
of Tennessee, Department of Children's Services ("DCS") and following a trial, terminated
the parental rights of Troy L. ("Father") to the minor child Breanna A. L. ("the Child")
pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-113 (g)(3)
(2010).  Father appeals the termination of his parental rights.  We find and hold that clear and
convincing evidence existed to terminate Father's parental rights pursuant to  Tenn. Code
Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-113 (g)(3), and that clear and
convincing evidence existed such that the termination was in the Child's best interest.  We,
therefore, affirm the Juvenile Court's order terminating Father's parental rights to the Child.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;
### Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS,
P.J., and JOHN W. MCCLARTY, J., joined.

John A. Shoaf, Chattanooga, Tennessee, for the appellant, Troy L.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General;
and Michelle N. Safer, Assistant Attorney General; for the appellee, State of Tennessee,
Department of Children's Services.

Robert B. Pyle, Guardian Ad Litem.

# OPINION

## Background

The Child was born in 2003. DCS filed a petition for temporary custody of the Child in December 2009. The petition alleged that Father was arrested in a domestic violence incident and that the Child's safety was threatened. The Child subsequently entered protective custody. In April 2010, a juvenile court magistrate adjudicated the Child dependent and neglected. In October 2010, DCS filed a petition in the Juvenile Court seeking to terminate the parental rights of Father and Tessa Q. ("Mother")[1] to the Child. The petition alleged abandonment by an incarcerated parent through wanton disregard for the Child's welfare and persistence of conditions that would expose the Child to further abuse and neglect. The petition also alleged that it was in the Child's best interest that Father's parental rights be terminated. The case was tried in March 2011.

Officer Derek Roncin ("Roncin") of the Chattanooga Police Department testified. Roncin stated that he met Father at about 1:00 a.m. on December 17, 2009. Roncin testified that he responded to a call and found Father on top of his girlfriend, Felicia S., with his hand "in a ball striking." Roncin intervened and removed Father from this position. Roncin stated that he found the Child upstairs unsupervised and crying. Roncin testified that the house was in disarray. Roncin stated that Father was charged with various offenses, including aggravated domestic assault relating to Felicia S. and domestic assault relating to the Child. Father later was convicted of domestic assault relating to Felicia S.

Certified copies of Father's criminal convictions were admitted. Father pled guilty to aggravated burglary in 2007. In September 2010, Father pled guilty to a number of charges: (1) promoting manufacturing methamphetamine; (2) theft of property under $500; (3) domestic assault (related to the incident on December 17, 2009); and, (4) possession of methamphetamine.

Mother testified. Mother stated that the Child had been in Father's custody since the Child was two years old. Mother and Father lived together for a period of time in East Ridge. Mother and Father lived together for six months after the Child was born. Mother stated that she split with Father because they "could not get along." Mother testified that Father used to sling her and choke her. Mother testified that on multiple occasions, Father tried to get Mother to drop the Child on the floor. Mother stated that Father got her on drugs. Mother further testified that either she or Father had used drugs in the Child's

---

[1]Mother did not contest the termination of her parental rights and is not a party on appeal. Therefore, we will focus on the case as it pertains to Father.

presence.

Father testified. Father stated that he was incarcerated on a three year sentence for "promotion of methamphetamine." Father had been unemployed for eight months before being incarcerated. Father had been incarcerated since December 2009. Father stated that he expected to be released on parole in June 2011. Father testified that he loved his daughter and wanted to get her back. Various photographs of the Child, as well as messages written by Father to the Child, were admitted. Before Father was incarcerated, he and the Child lived with Father's grandmother.

Father took certain parenting, anger management, and drug classes while in custody. Regarding anger management, Father testified that he actually had no issues with his anger management but took the class in order to learn to avoid arguing and because "it was a course that I thought, just because of my charges, might help and stuff." Father also denied having a domestic violence problem:

Q.     But you don't have a domestic assault problem?

A.     No, I do not.

Q.     So you never addressed it?

A.     Why would you address a problem that you do not have?

Father disputed Roncin's account of the December 2009 domestic violence incident. Father stated that he pushed Felicia S. off of him in response to an attack, and she set Father up for arrest. Father acknowledged that he had been charged with domestic assault in connection with Mother when they lived together in East Ridge but testified that he had not been convicted. Regarding domestic assault, Father testified:

Q.     Okay. And so all the times you've been charged with domestic assault, the women were lying on you; is that correct?

A.     It helps. Sometimes it's happened with me and her. But with her [Felicia S.], yes, it was a lie, and that's the only time it's ever happened with that girl.

Q.     Was it a lie when you were charged with domestic assault on Tessa?

A.     No. Me and her have shoved each other before, but that's before

Breanna was even born or right after she was just born. And, honestly, I got sick of it. I was young. I was single.

Q. Tessa only got charged once. How many times did you get charged?

A. Four or five . . . [b]ut I was also not found guilty either.

On the matter of drugs, Father stated:

I had a problem with buying pills, people giving me money, and, yes, I was on it for a short time. I've been [sic] and off it like she said, but I try to stay away from it. At the time, yes, I did get back on drugs, but I never once had them around my daughter or did them around my daughter. It was more a recreational thing.

Father testified that he bought pseudoephedrine pills for people. When Father was buying pills, his grandmother would sometimes watch the Child. Father used meth on and off for seven years. Father acknowledged that he would sometimes be high from methamphetamine when he took care of the Child. Father stated that he would try to get his job back at the electrical union, something which depends upon Father completing alcohol and drug rehab. Father also denied that he got Mother on drugs.

Billie L. ("Grandmother"), Father's grandmother, testified. Grandmother stated that she raised Father and functioned as his mother. Grandmother testified that, among other things, Father planned birthday parties for the Child and helped her with school projects. Grandmother stated that every Christmas, Father took the Child to see Santa Claus. Grandmother called Father "an excellent father."

Hamilton K. ("Foster Father") testified that he and his wife were foster parents of the Child. The Child had lived with the foster parents since December 2009. Foster Father testified that he worked in a security-related job and made enough money to take care of his family. Foster Father testified that the Child received therapy for anxiety issues. Foster Father stated that the Child was part of his family and that he wanted to adopt her.

After the trial, the Juvenile Court entered its detailed order terminating Father's parental rights to the Child after finding and holding, *inter alia*:

(A) Under T.C.A. §36-1-113(g)(1) and §36-1-102(1)(A)(iv), the Respondent [Troy L.] was incarcerated all of the four (4) months prior to the filing of this Petition, and is currently serving a three (3) year sentence for

promoting manufacturing methamphetamine, domestic assault, theft of property under $500, and possession of methamphetamine.

Under this ground, the Department of Children's Services has shown through clear and convincing evidence that the Respondent [Troy L.] engaged in criminal conduct that exhibited wanton disregard for child's welfare by committing crimes which led to his incarceration. At the time of removal in December 2009, the subject child had been in the custody of the father for approximately four (4) years. The Respondent, [Troy L.], was arrested in the home when the child was present, based on charges of aggravated assault, domestic assault, and false imprisonment. He later pled guilty to domestic assault based on these charges in September 2010.

Through the father's own testimony regarding his lifestyle prior to his incarceration in December 2009, the Court finds that the father's behavior prior to incarceration is part of a broader pattern of conduct that renders the father unfit or poses a risk of substantial harm to the subject child, were she to be returned to his custody. The father testified that when he had custody of Breanna, he used to buy drugs for other people for money and that these drugs were commonly used to make methamphetamine, which resulted in his being charged and pleading guilty to promoting manufacturing methamphetamine on September 9, 2010. The father also testified that when he had custody of Breanna, he "recreationally" used methamphetamine during the day while she was at school and then would take care of her at night while he was high. The mother, [Tessa Q.], testified that she and the father lived together until Breanna was about six (6) months old and that they regularly used methamphetamine together and that their relationship involved a lot of domestic violence. The mother testified that she was a drug addict and was currently voluntarily receiving drug treatment.

Even though he pled guilty to domestic assault on September 9, 2010 regarding his girlfriend, [Felicia S.], and admitted that he had been arrested more than once for domestic violence when he lived with the mother, [Tessa Q.], the father testified that he did not believe that he had problems with either domestic violence or methamphetamine. The Court finds that all of this evidence–the criminal convictions and the testimony of the mother and the father–reveals a broader pattern of pre-incarceration conduct that qualifies as wanton disregard for the welfare of the subject child.

It is possible that the father will be paroled in June 2011, but even if he

is, the Court finds that he will be a long way from being able to take custody and that the child has already been in custody for a year and a half and is currently in a safe and stable adoptive home.

(B) Under T.C.A. § 36-1-113 (g)(3), the Court finds by clear and convincing evidence that the subject child has been removed from Respondent [Troy L.]'s home by order of a court for a period of six (6) months. The conditions which led to the removal still persist or other conditions persist which in all probability would cause the child to be subjected to further abuse and neglect and which, therefore, prevent the child's return to the care of Respondent. There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to Respondent in the near future. The continuation of the parent and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

At the time of the removal of the subject child in December 2009, the Respondent [Troy L.] was incarcerated in a local jail on pending charges and he has since been convicted of and is incarcerated in prison based on convictions for promoting manufacturing methamphetamine, domestic assault, theft of property under $500, and possession of methamphetamine. The father was incarcerated due to his criminal behavior at the time of the child's removal in December 2009 and was transported from prison for this hearing. He may be paroled in June 2011, but even then, the father would be a long way from establishing a safe and stable living environment for the subject child.

Although the Court believes that the father loves his child very much, the Court finds, lamentably, that the father did not love his child enough to stop his criminal behavior and provide and [sic] safe and suitable living environment for her.

* * *

4. Pursuant to T.C.A. § 36-1-113(i), it is for the best interest of the subject child and the public that all of the parental rights of Respondents, [Tessa Q.] and [Troy L.], to the child, [Breanna A. L.], be forever terminated and that the custody, control and complete guardianship of said child should now be awarded to the State of Tennessee, Department of Children's Services with the right to place said child for adoption and to consent to any adoption *in loco parentis*, in that

-6-

(a)      Respondents, [Troy L.] and [Tessa Q.], failed to make any adjustment of circumstance, conduct or conditions to make it safe and in the child's best interest to be placed in the care of said Respondents.  Neither parent has completed all of the tasks necessary to provide a safe and stable living environment for the subject child.  The father testified that he had completed some parenting, alcohol and drug classes and anger management classes while incarcerated, but he still remains incarcerated and would have many other tasks to complete before being able to have custody of the subject child.  The Respondent [Tessa Q.] testified that she had not been able to complete any permanency plan tasks.

* * *

(d)      A change of caretakers and home is likely to have a negative effect on the child.  The child has been placed in a stable foster home since December 2009 and is thriving there.  The foster family wishes to adopt.

(e)      Respondent [Troy L.], has shown abuse or neglect toward the child as he is a convicted felon and is currently incarcerated in prison for promoting manufacturing methamphetamine, domestic assault, theft under $500 and possession of methamphetamine.  The father testified that he engaged in this criminal behavior while he had custody of the subject child, including buying drugs for friends and using methamphetamine.

(f)      The physical environment of Respondent [Troy L.]'s home is unhealthy and unsafe due to criminal activity and the use of illegal substances, which renders the Respondent consistently unable to care for the child in a safe and stable manner.  Prior to his incarceration, Respondent [Troy L.] was participating in the manufacture of methamphetamine and domestic assault. He is currently incarcerated and has yet to complete alcohol and drug treatment or domestic violence classes.

Father appeals the termination of his parental rights.

### Discussion

We restate Father's issues on appeal as follows: 1) whether the Juvenile Court erred in finding and holding that grounds existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-113

(g)(3); and, 2) whether the Juvenile Court erred in finding and holding that it was in the Child's best interest for Father's parental rights to be terminated.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights, stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id*. (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination

of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g.*, *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first address whether the Juvenile Court erred in finding and holding that grounds existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-113 (g)(3). In pertinent part to this appeal, Tenn. Code Ann. § 36-1-113 (g) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

* * *

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;....

Tenn. Code Ann. § 36-1-113 (g) (2010). As pertinent to this appeal, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or ….

Tenn. Code Ann. § 36-1-102 (1)(A)(iv) (2010).

The Juvenile Court found that clear and convincing evidence existed to terminate Father's parental rights for engaging in conduct prior to his incarceration that exhibited a wanton disregard for the welfare of the Child pursuant to Tenn. Code Ann. § 36-1-102 (1)(A)(iv) (2010). Father argues that the evidence does not sufficiently demonstrate that he exhibited wanton disregard for the Child's welfare.

As this Court stated in *In re: Audrey S.*: "We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re: Audrey S.*, 182 S.W.3d 838, 867-68 (Tenn. Ct. App. 2005). The record reveals that Father repeatedly engaged in methamphetamine use over the course of his custody of the Child. Father pled guilty to, among other things, drug-related offenses. Father, while apparently disputing the veracity of domestic violence claims against him, pled guilty to domestic assault.

We agree with the Juvenile Court that Father has shown a "pattern of pre-incarceration conduct that qualifies as wanton disregard for the welfare of the subject child." The Juvenile Court did not err in finding and holding that clear and convincing evidence was

introduced such that grounds were proven to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-102 (1)(A)(iv).

The Juvenile Court also found that grounds existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113 (g)(3), the ground concerning persistent conditions. Father argues, among other things, that there was no evidence to support the finding that abuse or neglect of the Child likely would occur in the future.

In its order, the Juvenile Court stated that "the father did not love his child enough to stop his criminal behavior and provide and [sic] safe and suitable living environment for her." Father pled guilty to a charge stemming from an act of domestic violence occurring in the home when the Child was present. Father testified that he was sometimes high on methamphetamine while taking care of the Child. We find it significant that Father's testimony demonstrated his denial of the problems he faces. Despite pleading guilty to a charge of domestic assault, Father testified that he does not have a domestic violence problem. Father also stated that, while he used to have a drug problem, he had no drug problem despite his drug-related criminal convictions and testimony about repeated past methamphetamine use. The Juvenile Court noted, we believe correctly, that "[Father] may be paroled in June 2011, but even then, the father would be a long way from establishing a safe and stable living environment for [the Child]." As Father refuses to accept that he has either a domestic violence problem or a drug problem, it is less than unlikely that Father will take any successful steps to remedy these persistent conditions. As Father himself testified: "Why would you address a problem that you do not have?"

The record does not even hint that Father is soon to be in any position to resume a parental role with the Child. Meanwhile, the Child is living with foster parents who are supporting the Child and tending to her anxiety issues. The Juvenile Court did not err in finding and holding that clear and convincing evidence existed that grounds were proven to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(3).

We next consider whether the Juvenile Court erred in finding and holding that it was in the Child's best interest for Father's parental rights to be terminated. The relevant statutory provision is Tenn. Code Ann. § 36-1-113 (i), which provides:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of

circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113 (i) (2010).

The Juvenile Court found that Father had shown abuse or neglect toward the Child and that Father's home is unhealthy due to the use of illegal substances and criminal

-12-

activity in the home. The record in this case reveals a long and troubled history of drug use, illegal activity, and domestic violence incidents by Father. Indeed, the domestic violence incident of December 2009 which led to the Child being placed in DCS's protective custody occurred in close proximity to the Child. We note that the record reflects that the Child is currently in a stable environment under the care of the foster family. The Juvenile Court's findings, made under a clear and convincing evidence standard, are supported by a preponderance of the evidence.

The evidence in the record on appeal does not preponderate against the findings made by the Juvenile Court under the clear and convincing evidence standard that grounds for terminating Father's parental rights were proven and that it was in the Child's best interest for Father's parental rights to be terminated. We, therefore, affirm the Juvenile Court's order terminating Father's parental rights to the Child.

## Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the appellant, Troy L., and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE